KNIGHTS OF COLUMBUS COUNCIL No. 3884 (THE REVEREND EDWARD SHAUGHNESSY COUNCIL) *v.* LEO J. MULCAHY, COMMISSIONER OF STATE POLICE, ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued January 5—decided March 7, 1967

*Edward G. Pizzella,* with whom, on the brief, was *Joseph P. Cianci,* for the appellant (plaintiff).

*David B. Beizer,* assistant attorney general, with whom were *F. Michael Ahern,* assistant attorney general, and, on the brief, *Harold M. Mulvey,* attorney general, for the appellee (named defendant); with him also was *William W. Sprague,* for the appellee (defendant McCusker).

ALCORN, J. The plaintiff, an unincorporated fraternal organization, brought this action against the commissioner of state police and the chief of police of Newington, seeking a declaratory judgment that § 53-300 of the General Statutes, described in the complaint as "Public Act No. 154", does not prohibit bingo games on Sunday. The complaint alleged that the defendants had threatened to revoke the plaintiff's permit to conduct such games and, as ancillary relief, sought a temporary injunction to restrain a revocation pending the rendition of the requested declaratory judgment. By a substituted complaint, a second count was added seeking a declaratory judgment determining whether § 53-300 is constitutional. The requested temporary injunction was issued on stipulation of the parties, they stipulated as to the facts, and the case was submitted to the trial court on oral arguments and briefs. The court dissolved the temporary injunction and rendered judgment that § 53-300 is constitutional and does prohibit the issuance of permits for the playing of bingo on Sunday. The plaintiff has appealed from the judgment.

Owing to the manner in which the plaintiff has chosen to proceed, it is necessary to clarify, at the outset, certain basic principles which must govern our decision. In the first place, no declaratory judgment can be rendered unless all persons having an interest in the subject matter of the complaint are parties to, or have reasonable notice of, the action. Practice Book § 309 (d). The plaintiff has sought a broad determination as to whether § 53-300 "proscribes bingo games on Sunday, and whether or not said statute is constitutional," and the judgment as rendered would, by its terms, affect not

only the plaintiff but any others who might be conducting Sunday bingo games. The record before us does not disclose whether there are others who might be affected by the judgment and, if there are, who or how numerous they may be. For that reason, any declaratory judgment rendered in this case must be limited solely to the effect of the statute on the activity conducted by the plaintiff. *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 217, 83 A.2d 177.

In *Manafort Bros., Inc.* v. *Kerrigan,* 154 Conn. 112, 113, 222 A.2d 218, both the complaint and the stipulation of facts showed that other persons who were not parties and who had not been given reasonable notice of the action had an interest in the subject matter, and we held that a declaratory judgment could not properly be rendered. In the present case, it does not affirmatively appear, nor can we assume, that there are any other persons who have an interest in the subject matter of this litigation. See *Wenzel* v. *Danbury,* 152 Conn. 675, 677, 211 A.2d 683. Consequently we will consider the issues presented, but only as they affect this plaintiff.

In the second place, it is the plaintiff's burden, so far as any constitutional issue is concerned, to establish "that the effect or impact of the challenged statute on . . . [it] adversely affects a constitutionally protected right which . . . [it] has . . . under the facts of . . . [its] particular case." *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698. Whether the statute would have an unconstitutional impact under another state of facts concerning some other party unknown to this case is not before us.

The plaintiff, through a nonstock corporation,

owns a large building in Newington which is subject to a $100,000 mortgage. In order to maintain the building and meet payments on the mortgage, the plaintiff resorts to fund raising activities to supplement its income from dues and rentals. Since June, 1965, a substantial part of the plaintiff's income has been derived from conducting Sunday night bingo games. The games have produced a weekly income averaging between $200 and $250. In order to conduct the games the plaintiff has obtained, from the chief of police in Newington, a permit pursuant to § 7-169 of the General Statutes. The most recent permit is what is called a class B permit, dated October 6, 1965. Under such a permit, § 7-169 (f) authorizes the plaintiff to conduct "not more than forty and not less than fifteen bingo games during any one day of each week between the date of issue of any such permit and September fifteenth following. 'Class B' permits shall allow the playing of bingo no more than one day weekly." The plaintiff conducts the bingo games in a large hall or auditorium on the upper floor of its building. An admission charge of $1 is paid by each person attending and entitles him to four playing cards. Additional cards may be purchased for an additional amount. The commissioner of state police became charged with the statewide regulation of bingo games on October 1, 1965, and, on advice of the attorney general, notified the chief of police in Newington, on October 14, 1965, in substance, that Sunday bingo games were illegal under § 53-300 and suggested that corrective action be taken at once. The plaintiff brought this action five days later.

The pertinent parts of § 53-300 provide as follows: "Any person who does, or requires an

employee to do, any secular business or labor, except works of necessity or mercy, or, unless required by necessity or mercy, keeps open any shop, warehouse or manufacturing or mechanical establishment, or sells or exposes for sale any goods, wares or merchandise, or, except as hereinafter provided, engages in any sport, between the hours of twelve o'clock Saturday night and twelve o'clock Sunday night next following, shall be fined not more than fifty dollars. . . . The foregoing provisions of this section shall not apply to any amateur ball game or other outdoor game or sport by or between amateurs on Sunday; provided no admission fee shall be charged and the same shall be so conducted as not to interfere with public worship or disturb the reasonable comfort, quiet and peace of any person. The park commissioners or park committee of any town, city or borough are authorized to permit free concerts of music to be given, and amateur athletic sports to be engaged in, on Sunday, at stated places, in one or more of the public parks belonging to such town, city or borough, subject to such rules as the respective committee or commissioners may adopt for the purpose of securing order and quiet conduct on the part of all who engage in such music or sports and also of all persons in attendance; provided only places shall be so designated where such music can be given or sport engaged in without disturbing the reasonable comfort, quiet and peace of any other person, and provided no game or sport shall be permitted in any tournament or for any admission fee or prize. Any person who is present at any concert of music, dancing or other public diversion on Sunday or on the evening thereof, except as permitted by this section, shall be fined . . . ."

The plaintiff's argument, in summary, is that not only does § 53-300 not prohibit bingo games on Sunday but, when § 53-300 is read in conjunction with § 7-169 (f), an express legislative intent to permit bingo on Sunday is disclosed. To sustain this claim, the plaintiff relies on the fact that a class B permit under § 7-169 (f) allows bingo to be played "during any one day of each week" and "no more than one day weekly." This language, the plaintiff says, includes Sunday. The plaintiff argues that bingo is a form of gambling, and, since there has always been a general prohibition against gambling, there was no necessity, either in § 53-300 or in its predecessors, specifically to prohibit bingo games on Sunday. When, however, the plaintiff continues, § 155e of the 1939 Cumulative Supplement, which is the predecessor of § 7-169, was enacted, permitting the conduct of bingo games by a limited number of designated sponsors, the language of that statute, and the language of all subsequent versions, neither directly nor indirectly prohibited bingo on Sunday. Thus it must be held to be permitted.

The argument is more ingenious than persuasive. It is conceded that § 53-300, entitled "Work and recreation on Sunday", has a history dating from colonial days. See *State* v. *Miller,* 68 Conn. 373, 377, 36 A. 795. The predecessor of § 7-169 was first enacted, however, in 1939. Subsection (4) of § 155e of the 1939 Cumulative Supplement contained language concerning the playing of bingo under a class B permit identical with that embodied in § 7-169 (f), which we have quoted above. In enacting the 1939 statute, the General Assembly must be presumed to have acted "with existing relevant statutes in mind and with the intention of creating a consistent

body of law." *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883; *Hartley* v. *Vitiello,* 113 Conn. 74, 82, 154 A. 255. That presumption is fortified in this instance by the fact that the then existing predecessor of § 53-300 was amended at the same 1939 session to embrace the exact language material to this controversy now found in § 53-300. Cum. Sup. 1939, § 1452e. And in the 1965 session we again find § 7-169 amended by Public Act No. 451 and § 53-300 amended by Public Act No. 154. Thus twice we find the same legislative session formulating, at one and the same time, the statutory pronouncements which are before us in § 53-300 and § 7-169 (f). If, by fair interpretation, we find a reasonable field of operation for both without destroying or perverting their evident meaning and intent, they are to be accorded a concurrent effect. *Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536.

Under § 1-1 of the General Statutes, the words used in the two sections are to be "construed according to the commonly approved usage of the language." *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474, 217 A.2d 698. Section 53-300 prohibits "any secular business or labor, except works of necessity or mercy," on Sunday. "Secular" is commonly taken to mean "nonecclesiastical" or "not religious in character nor devoted to religious ends or uses." Webster, New International Dictionary (2d Ed.). The word "business" is given widely variant meanings. *Fisher* v. *Board of Zoning Appeals,* 143 Conn. 358, 361, 122 A.2d 729; *Koops* v. *Gregg,* 130 Conn. 185, 193, 32 A.2d 653 (dissenting opinion); *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 294, 82 A. 561. We have said that, applied to a public corpo-

ration, it "signifies the conduct of the usual affairs of the corporation, and such as commonly engage the attention of its officers." *Massolini* v. *Driscoll*, 114 Conn. 546, 552, 159 A. 480.

The activity in which the plaintiff was engaged was clearly the conduct of a secular business on Sunday. It was, purely and simply, a profitable business venture solely designed to secure a substantial part of the wherewithal to maintain its building. There is no claim, nor could there be, that it was a work "of necessity or mercy." *State* v. *Ryan*, 80 Conn. 582, 584, 69 A. 536. Nor is the activity embraced within any of the exceptions named in § 53-300.

Turning then to § 7-169, we find no reference to the ban on secular business which is imposed by § 53-300. Thus the construction which the plaintiff would put on § 7-169 is that, with respect to the conduct of bingo games, it repeals § 53-300 by implication because it provides that, under a class B permit, bingo may be played "one day weekly" and "during any one day of each week." Repeals by implication are not favored. *Costa* v. *Reed*, 113 Conn. 377, 385, 155 A. 417. We find no repugnancy in the language of the two statutes. Section 7-169 can, with complete reasonableness, be read to limit the conduct of bingo games under a class B permit to only one day in each weekly interval without in any way impinging upon the prohibition in § 53-300 against the conduct of secular business on Sunday.

The trial court was correct in concluding that § 53-300 prohibited the plaintiff's conduct of bingo games on Sunday.

The attack on the constitutionality of § 53-300 can be briefly disposed of. The validity of the section must be tested by its effect on the plaintiff.

*State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686. The plaintiff's claim is that the section is unconstitutional because of vagueness. This claim, in turn, is based on the argument that the only portion of § 53-300 applicable to the plaintiff's activity is the portion which prohibits persons from engaging in unauthorized sports or games or from being present at unauthorized public diversions on Sunday. The plaintiff then proceeds to an attack on the claimed vagueness of the terms "sport" and "diversion" as applied to the playing of bingo. It is clear from what we have already said that this attack misses the mark entirely. The plaintiff was not engaging in a sport, game or diversion on Sunday. Rather, it was conducting, on Sunday, a secular business which was neither a work of necessity nor a work of mercy. No vagueness in that portion of § 53-300 is claimed.

The court was correct in deciding that § 53-300, as applied to the plaintiff's activity, was not unconstitutional.

As indicated at the outset, however, the judgment of the trial court is, by its terms, too broad, owing to the fact that its effect is not confined to the parties to this action.

There is error in the form of the judgment, it is set aside and the case is remanded with direction to render judgment as on file except as corrected to accord with this opinion.

In this opinion the other judges concurred.